United States Courts
Southern District of Texas
FILED

OCT 2 1 2010

Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | CRIMINAL NO. **10 - 732** |
| v. | § | 18 U.S.C. § 371 |
| | § | 18 U.S.C. § 1347 |
| JAMES CLAUDE REESE, JR. | § | 18 U.S.C. § 1956h |
| LIA SAMIRA ST. JUNIUS | § | 18 U.S.C. § 1956(a)(1)(B)(i) |
| BRENDA ADRIANA LOPEZ | § | 26 U.S.C. § 7201 |
| LILY ZATHEL JOHNSON | § | 42 U.S.C. § 1320a-7b(b)(1)(A) |
| MARTHA RAMOS | § | 42 U.S.C. § 1320a-7b(b)(2)(A) |
| DEVON MICHEL SPICER | § | |

Defendant

**INDICTMENT**

THE GRAND JURY CHARGES:

Sealed
Public and unofficial staff access
to this instrument are
prohibited by court order.

**COUNT ONE**
**(Conspiracy – 18 U.S.C. § 371)**

**A. INTRODUCTION**

UN-SEALED PER oral motion
to unseal granted 11-4-10

At all times during this indictment:

**THE MEDICARE PROGRAM**

1.     The Medicare Program ("Medicare") was a federally funded health insurance program that provided health care benefits to certain individuals, primarily the elderly, blind and disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services (CMS), an agency of the United States Department of Health and Human Services (HHS), which was formerly known as the Health Care Financing Administration ("HCFA").

2.     Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

1

3.      Medicare Part B helped pay for certain physician services, outpatient services and

other services, including durable medical equipment ("DME") which were medically

necessary and were ordered by licensed medical doctors or other qualified health care

providers.  DME is repeatedly used equipment which is designed for a medical purpose,

such as orthotic braces.

4.      HHS, through CMS, contracted with TrailBlazer Health Enterprises, LLC located

in Dallas, Texas to process claims submitted by physicians and other health care

providers for individuals who received benefits paid for by Medicare.  These individuals

were commonly referred to as "beneficiaries."

## THE MEDICAID PROGRAM

5.      The Medicaid program is a state-administered health insurance program funded

predominately by the United States Government and administered by the State of Texas.

The Medicaid program helps pay for reasonable and necessary medical procedures and

services provided to individuals who are deemed eligible under state low-income

programs.  The Texas Medicaid Program is a cooperative federal-state program to furnish

medical assistance to the indigent.  Coverage of reasonable and medically necessary

DME expenses is among the benefits available to covered individuals.  Medicaid is also

"a health care benefit program" as defined by Title 18, United States Code, Section 24(b).

6.      The State of Texas contracts with Texas Medicaid Healthcare Partnership

("TMHP") to process claims submitted by physicians and other health care providers for

individuals who received benefits paid for by Medicaid.  These individuals were also

commonly referred to as "recipients."

7.　　Upon assignment of a Medicaid provider number, a current Texas Medicaid Provider Procedures manual was distributed to the provider. Subsequent to that, TMHP mailed to the provider all Texas Medicaid Bulletins, which included updates to the procedure manual distributed by TMHP. The procedure manual, bulletins and updates detailed the rules and regulations pertaining to services covered by Medicaid and how to appropriately bill for providing these services to recipients.

8.　　The Medicaid program in Texas generally paid a portion of claims originally submitted to Medicare if the patient had both Medicare and Medicaid coverage. This portion was generally twenty percent of the Medicare allowance for the billed charges, and Medicaid paid its portion if Medicare originally allowed the claim. Claims for patients who were only Medicaid recipients and not Medicare beneficiaries must be submitted directly to Medicaid. The guidelines regarding payment of these claims were contained in the Provider Procedures manual given to DME providers upon enrollment in the Medicaid Program and were similar to Medicare guidelines.

9.　　Medicare and Medicaid regulations required that a provider document every service rendered to a patient for which a bill is submitted to Medicare and/or Medicaid. This documentation was part of the patient's medical record, and retention of these records for a minimum period of five (5) years was required.

## DME SUPPLIERS AND MEDICARE BILLING PROCEDURES

10.　　In order to receive reimbursement from Medicare for DME equipment provided to Medicare beneficiaries, a DME supplier was required to be an approved Medicare supplier. The DME supplier obtained this approval by submitting an application to Palmetto GBA. If the supplier met certain minimum qualifications, Medicare approved

the application, and the supplier was issued a unique identification number also known as a "supplier number." The DME supplier was then allowed to submit bills for services, known as "claims," to Medicare for reimbursement for the cost of distributing medically necessary DME to Medicare beneficiaries.

11. When DME suppliers provided services to a Medicare beneficiary in the form of DME equipment, Medicare permitted approved DME suppliers to submit Medicare claims on paper or electronically. Medicare required that submitted claims contain the following details: the Medicare beneficiary's name and Medicare identification number; the name and unique provider identification number of the physician who ordered the service; the service that the provider provided; the date of service; and the charge for the service provided.

12. In Texas, Medicare Part B was administered by Palmetto Government Benefits Administrators ("Palmetto GBA"), which had entered into a contract with HHS and CMS to serve as the entity or "carrier" that received, processed and paid Medicare claims for DME, including those relating to orthotic braces.

## ORTHOTIC BRACES AND PHYSICIAN'S ORDERS

13. Under Medicare rules, Medicare Part B would pay for the cost of medically necessary orthotic braces and equipment when supplied to a beneficiary if the beneficiary had a debilitating medical condition which would be improved by the use of an orthotic brace, and the need for the orthotic brace was documented by a licensed physician or approved medical practitioner in the form of a "Physician's Order" or, in some cases, a "Certificate of Medical Necessity" ("CMN").

14.     In order for a DME supplier to be reimbursed for providing an orthotic brace to a Medicare beneficiary, Medicare required that the supplier obtain documentation that the orthotic brace was medically necessary.  Although no specific document outside of a simple physician's order was required to support the patient's medical need for the equipment, the patient's treating physician was required to assess the patient's need for and benefit from an orthotic brace.

## DEFENDANTS

15.     JAMES CLAUDE REESE, JR. was a resident of Houston, Texas and the owner and operator of THE REESE GROUP. He was also a co-owner of THE MOBILITY STORE and was involved in the daily operations from its inception on or about March 10, 2004 until it ceased submitting claims to Medicare/Medicaid in or about January, 2010.

16.     LIA SAMIRA ST. JUNIUS was a resident of Houston and co-owner of THE MOBILITY STORE.  She was involved in the daily operations of the company from its inception until its provider number was revoked.

17.     BRENDA ADRIANA LOPEZ, was employed as the office manager of THE REESE GROUP and THE MOBLITY STORE.

18.     LILY ZATHEL JOHNSON, was the billing manager for THE MOBILITY STORE.  ·

19.     MARTHA RAMOS was an individual who received payments from THE REESE GROUP for the referral of Medicare and Medicaid patients to  THE MOBILITY STORE for the purpose of receiving orthotic equipment and supplies.

20.     DEVON MICHEL SPICER was an individual who received payments from THE

REESE GROUP  for the referral of Medicare and Medicaid patients to THE MOBILITY

STORE for the purpose of receiving orthotic equipment and supplies.

## COMPANIES

21.     THE MOBILITY STORE was a DME company located in Houston, Texas owned

by LIA SAMIRA ST. JUNIUS  and JAMES CLAUDE REESE, JR. and  predominately

supplied orthotic braces and accessories.   THE MOBILITY STORE also maintained

business locations in Florissant, Missouri and Long Beach, California for the purpose of

obtaining a DME provider number.

22.     THE REESE GROUP was a marketing and recruitment company owned and

operated by JAMES CLAUDE REESE, JR. which paid kickbacks to individuals for the

referral of Medicare beneficiaries and Medicaid recipients to THE MOBILITY STORE.

23.     ELITE CARE MEDICAL SERVICES, INC.  was a medical clinic located at 7400

Harwin Drive in Houston, Texas that provided medical services to Medicare beneficiaries

and Medicaid recipients. DEVON MICHEL SPICER was involved in the operation of

ELITE CARE MEDICAL SERVICES, INC.

24.     From about April, 2004 and continuing until about January 2010,  THE

MOBILITY STORE submitted claims to Medicare totaling approximately $10.5 million

and was paid approximately $5.1 million for services related to the distribution of DME

claimed to have been medically necessary for the health and well-being of Medicare

patients.  These claims were false, fraudulent and fictitious.

25.     From about February, 2005 and continuing until about January 4, 2010,  THE

MOBILITY STORE submitted claims to Medicaid totaling approximately $4.5 million

and was paid approximately $563,182.33 for services related to the distribution of DME claimed to have been medically necessary for the health and well-being of Medicaid patients.  These claims were false, fraudulent and fictitious.

### B.  THE CONSPIRACY

26.    Beginning in 1999, the exact time being unknown to the Grand Jury and continuing thereafter until January, 2010, in the Houston Division of the Southern District of Texas and elsewhere, defendants,

**JAMES CLAUDE REESE, JR.**
**LIA SAMIRA ST. JUNIUS**
**BRENDA ADRIANA LOPEZ**
**LILY ZATHEL JOHNSON**
**MARTHA RAMOS**
**DEVON MICHEL SPICER**

did knowingly, intentionally and willfully combine, conspire, confederate and agree with each other and other persons known and unknown to the Grand Jury to commit and abet certain offenses against the United States:

      a.      To violate the Health Care Fraud statute, that is, to knowingly and willfully execute or attempt to execute a scheme or artifice: (1) to defraud a health care benefit program; in this case the Medicare and Medicaid programs; and (2) to obtain, by means of material false and fraudulent pretenses, representations and promises money and property owned by, or under the custody and control of, a health care benefit program; in this case Medicare and Medicaid; in connection with the delivery of and payment for health care benefits, items and services; in this case orthotic braces; in violation of Title 18 United States Code Section 1347.

b. To violate the Anti-Kickback statute by knowingly and willfully soliciting and receiving any remuneration, including any kickback, directly or indirectly, overtly or covertly, in cash or in kind to induce the referral of Medicare beneficiaries for the furnishing and arranging for the furnishing of any item or service for which payment may be made in whole or in part under the Medicare program, in violation of Title 42 U.S.C. 1320a - 7b(b)(1)(A);

c. To violate the Anti-Kickback statute by knowingly and willfully offering and paying remuneration, including any kickback, directly or indirectly, overtly or covertly, in cash or in kind to induce the referral of Medicare beneficiaries for the furnishing and arranging for the furnishing of any item or service for which payment may be made in whole or in part under the Medicare program, in violation of Title 42 U.S.C. 1320a-7b(b)(2)(A);

## C. OBJECT OF THE CONSPIRACY

27. It was the object of the conspiracy for the defendants to unlawfully enrich themselves by falsely and fraudulently representing that:

a. the Medicare beneficiaries and Medicaid recipients who received equipment from THE MOBILITY STORE all suffered from debilitating, full body arthritis which afflicted multiple joints and this arthritis was of sufficient severity that the recipients required a complete set of orthotic braces in order to obtain relief from their arthritis pain;

b.      the claims submitted to Medicare and Medicaid for these orthotic braces and equipment accurately reflected the orthotic braces and equipment provided to Medicare beneficiaries and Medicaid recipients;

c.      the claims submitted to Medicare and Medicaid accurately reflected that the patient's treating physician had indicated such equipment was medically necessary when in fact  physicians had not approved patients to receive all the equipment listed on the claims forms.

d.      the claims were not the product of  kickbacks which were  paid in order to induce the referral of  beneficiaries and recipients to receive equipment and supplies and payment was subsequently made by the Medicare and Medicaid programs for such equipment and supplies.

e.      the services were provided on the date listed on the claim forms submitted to Medicare and Medicaid.


## D.  MANNER AND MEANS

The manner and means of the conspiracy included, but were not limited to, the following:

28.      Defendants JAMES CLAUDE REESE, JR, LIA SAMIRA ST. JUNIUS AND BRENDA LOPEZ   would and did pay and authorize the payment of kickbacks to individuals who referred Medicare beneficiaries and Medicaid recipients to THE MOBILITY STORE for the purpose of  billing Medicare and Medicaid for providing orthotic equipment and supplies.

29.      Defendants JAMES CLAUDE REESE, JR, LIA SAMIRA ST. JUNIUS, BRENDA LOPEZ  and LILY ZATHEL JOHNSON did not collect or attempt to collect

copayments from Medicare beneficiaries and Medicaid recipients as required by Medicare and Medicaid.

30.     Defendant JAMES CLAUDE REESE, JR. would and did cause false claims to be submitted to Medicare and Medicaid by representing on claim forms that  certain equipment identified on the claim form had  been provided when in truth and fact, such equipment had not been provided

31.     Defendant JAMES CLAUDE REESE, JR. would and did conceal and disguise his ownership in The MOBILITY STORE in order to obtain money from Medicare and Medicaid.

32.     Defendant JAMES CLAUDE REESE, JR.  would and did cause false claims to be submitted to Medicare and Medicaid by representing that a physician had actually authorized and approved patients to receive certain medical equipment when in truth and fact such equipment had not been ordered by a physician.

33.     Defendant JAMES CLAUDE REESE, JR. would and did research billing and reimbursement codes for certain equipment and in turn caused claims to be submitted to Medicare and Medicaid for providing such equipment when in truth and fact equipment associated with those codes had not been provided.

34.     Defendant JAMES CLAUDE REESE, JR. would and did write checks and withdraw large sums of money for personal expenses from THE MOBILITY STORE's bank accounts despite the fact that he failed to notify Medicare and Medicaid that he had an ownership interest in the company.

35.     Defendant JAMES CLAUDE REESE, JR. would and did bill Medicare and Medicaid a different fee than cash paying customers were charged.

36.    Defendant LIA SAMIRA ST. JUNIUS would and did make false statements to officials of a Medicare contractor regarding the involvement of her stepfather, JAMES CLAUDE REESE JR., in the operation of THE MOBILITY STORE.

37.    Defendant LIA SAMIRA ST. JUNIUS  would and did cause false claims to be submitted to Medicare and Medicaid by representing that a physician had actually authorized and approved patients to receive certain medical equipment when in truth and fact such equipment had not been ordered by a physician.

38.    Defendant BRENDA ADRIANA LOPEZ would and did cause false claims to be submitted to Medicare and Medicaid by participating in the submission of claims for equipment that had not been provided.

39.    Defendant BRENDA ADRIANA LOPEZ would and did cause false claims to be submitted to Medicare and Medicaid by participating in the submission of claims for equipment that had not been approved or authorized by a physician.

40.    Defendant LILY ZATHEL JOHNSON would and did cause claims to be submitted to Medicare and Medicaid by participating in the submission of claims for equipment that had not been provided.

41.    Defendant LILY ZATHEL JOHNSON would and did cause claims to be submitted to Medicare and Medicaid by participating in the submission of claims for equipment that had not been approved or authorized by a physician.

42.    Defendant MARTHA RAMOS would and did solicit Medicare beneficiaries and Medicaid recipients for the purpose of referring beneficiaries and recipients to THE MOBILITY STORE.

43.    Defendant MARTHA RAMOS would and did receive kickback payments from THE MOBILITY STORE for the referral of Medicare beneficiaries and Medicaid recipients.

44.    Defendant DEVON MICHEL SPICER would and did solicit Medicare beneficiaries and Medicaid recipients for the purpose of referring beneficiaries and recipients to THE MOBILITY STORE.

45.    Defendant DEVON MICHEL SPICER would and did receive kickback payments from THE MOBILITY STORE for the referral of Medicare beneficiaries and Medicaid recipients.

46.    Defendants would and did falsely indicate that orthotic braces and equipment had been provided on a date different than indicated on a prescription or order form for purposes of obtaining payment from Medicare and Medicaid.

47.    The defendants would and did use proceeds of the Medicare and Medicaid fraud to pay unlawful kickbacks, pay other operating expenses and enrich themselves.

### E. OVERT ACTS

48.    In furtherance of the conspiracy and to effect the objects thereof, the following Overt Acts, among others, were committed in the Southern District of Texas, and elsewhere:

(1)    On or about January 13, 1999, defendant JAMES CLAUDE REESE, JR. applied for an assumed name for "THE REESE GROUP" in Harris County, Texas.

(2)    On or about January 1, 2003, defendant JAMES CLAUDE REESE, JR. rented the property at 111 Flower Valley Shopping Center, Florissant, Missouri for THE REESE GROUP.

(3)     On or about January 15, 2004, defendant LIA SAMIRA ST. JUNIUS applied for an employer identification number under the name, "THE MOBILITY STORE" using address 111 Flower Valley Shopping Center, Florissant, Missouri.

(4)     On or about March 10, 2004, defendant JAMES CLAUDE REESE, JR. applied for a fictitious name registration for THE MOBILITY STORE with the Secretary of State for the State of Missouri.

(5)     On or about May 15, 2004, defendant LIA SAMIRA ST. JUNIUS applied for a Medicare provider number for THE MOBILITY STORE using physical address 111 Flower Valley Shopping Center, Florissant, Missouri. ST. JUNIUS indicated she was the sole owner of THE MOBILITY STORE even though she well knew that JAMES CLAUDE REESE JR. was a co-owner.

(6)     On or about May 18, 2004, defendant LIA SAMIRA ST. JUNIUS applied for an assumed name of "THE MOBILITY STORE" in Florissant, Missouri.  This form also listed defendant  JAMES CLAUDE REESE, JR. as an owner.

(7)     On or about September 24, 2004, defendant JAMES CLAUDE REESE completed an application for credit for THE MOBILITY STORE with Dalton Medical stating he was a manager.

(8)     On or about October 24, 2005, defendant DEVON MICHEL SPICER referred a Medicare beneficiary to THE MOBILITY STORE for the purpose of providing orthotic equipment and supplies.

(9)     On or about October 25, 2005, defendant LIA SAMIRA ST. JUNIUS caused Medicare to be billed for orthotic equipment for Medicare beneficiary T.J. that was not provided.

(10)     On or about November 8, 2005, defendant DEVON MICHEL SPICER received a kickback payment for the referral of Medicare beneficiary T.J. to THE MOBILITY STORE.

(11)     On or about June 28, 2006, defendant LILY ZATHEL JOHNSON submitted a claim to Medicare for orthotic equipment designated by HCPCS Codes L0631, L3984, L1930 and L3912 that was never provided to Medicare beneficiary B.O.

(12)     On or about July 17, 2006, defendant BRENDA LOPEZ paid a kickback for the referral of Medicare beneficiary B.O. to THE MOBILITY STORE.

(13)     On or about July 28, 2006, defendant MARTHA RAMOS referred a Medicare beneficiary to THE MOBILITY STORE for the purpose of providing orthotic equipment and supplies.

(14)     On or about July 28, 2006, defendant JAMES REESE caused Medicare to be billed for orthotic equipment to Medicare beneficiary R.B. that was not provided.

(15)     On or about August 14, 2006, defendant MARTHA RAMOS received a kickback payment for the referral of Medicare beneficiary R.B. to THE MOBILITY STORE.

(16)     On or about September 21, 2006, defendant LIA SAMIRA ST. JUNIUS caused Medicare to be billed for orthotic equipment for Medicare beneficiary R.S.  that was not provided.

(17)     On or about September 21, 2006, defendant LILY JOHNSON billed Medicare for orthotic equipment for Medicare beneficiary R.S. that was not ordered nor provided.

14

(18)     On or about October 11, 2006, defendant BRENDA LOPEZ paid a kickback payment for the referral of Medicare beneficiary R.S. to THE MOBILITY STORE.

In violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH TWENTY-TWO
### (Health Care Fraud-Orthotic Supplies)
### 18 U.S.C. 1347

1.     The Grand Jury realleges paragraphs 1 through 25 of Count One above and incorporates them as alleged herein.

2.     Beginning in or about 2004, defendants identified herein, billed Medicare and Medicaid for services provided to Medicare beneficiaries and Medicaid recipients who were unlawfully referred for the purpose of authorizing and approving beneficiaries and recipients to receive orthotic braces.  The orthotic braces which were provided were of inferior quality to the products which were billed to Medicare and Medicaid, and, in some cases, beneficiaries were not provided any products at all.  As a result of this unlawful scheme, Medicare and Medicaid were billed in excess of $10.5 million and paid in excess of $5.6 million for the false and fraudulent claims identified below.  The table below details the HCPCS Codes used to upcode the associated products:

|  | Back Brace | Knee Brace | Ankle Brace | Elbow Brace | Wrist Brace | Flexion Glove |
|---|---|---|---|---|---|---|
| HCPCS Codes | L0464 K0618 K0640 L0631 L0637 | L1847 L1850 L1843 | L1930 | L3760 | L3984 | L3912 |

## PURPOSE OF THE SCHEME TO DEFRAUD

3.      It was the purpose of the scheme to defraud to obtain money from the Medicare

and Medicaid programs by billing for DME services which were not provided or were

substituted with inferior services or products, namely orthotic braces billed under

procedure codes L0464, K0618, K0640, L0631, L0637, L1847, L1850, L1843, L1930,

L3760, L3984 and L3912.

## SCHEME TO DEFRAUD

4.      It was part of the scheme and artifice to defraud that the defendants submitted

claims to the Medicare and Medicaid programs which were false or fraudulent in

numerous ways including:

        a.      the beneficiaries' or recipients' medical conditions were changed to reflect

that they had arthritis or unspecified arthropathy when in fact the beneficiaries or

recipients had never been diagnosed with these conditions by a physician or qualified

medical professional;

        b.      Medicare and Medicaid were billed for orthotic equipment prior to any

equipment actually being provided to beneficiaries or recipients;

        c.       Medicare and Medicaid were charged a different and inflated fee than

cash paying customers of THE MOBILITY STORE;

        d.      the beneficiaries or recipients were billed for products which were not

authorized by a physician;

        e.      the orthotic braces and equipment were billed to Medicare and Medicaid

as the result of a kickback and unlawful referral for medical services; and

f.   Medicare and Medicaid were billed for orthotic equipment that was not provided.

**HEALTH CARE FRAUD**

5.   Beginning in or about 2004 and continuing thereafter to in or about January, 2010, in the Houston Division of the Southern District of Texas and elsewhere, the defendants

**JAMES CLAUDE REESE, JR.**
**LIA SAMIRA ST. JUNIUS**
**BRENDA ADRIANA LOPEZ**
**LILY ZATHEL JOHNSON**

identified in the specific counts below, did knowingly and willingly execute or attempt to execute a scheme or artifice to defraud a health care benefit program and to obtain by means of material, false and fraudulent pretenses, representations and promises any of the money and property owned by, and under the custody and control of, a health care benefit program, which affected interstate commerce,  in connection with the delivery of and payment for health care benefits, items and services, specifically, on or about the below listed dates, the defendants caused to be submitted false and fraudulent claims for services  to Medicare and Medicaid in connection with the delivery of orthotic brace(s) in the amounts listed below:

| Count | Medicare/ Medicaid Number | Claim Number(s) | Date Of Service | HCPCS Codes | Amount Billed |
|-------|---------------------------|-----------------|-----------------|-------------|---------------|
| 2 | xxxxx2268A (T.J.) | 5298764215000 | 10/24/2005 | L1847 L3908 L3912 | $1,816.00 |
| 3 | xxxxx4743A (D.K) | 5363737698000 5363737699000 | 12/28/2005 | L1847 L3760 L3912 | $2766.00 |

| 4 | xxxxx3993A<br>xxxxx7682<br>(V.F.) | 6030732654000<br>6030732655000<br>030519935 | 01/26/2006 | L0631<br>L1847<br>L3760<br>L3912 | $4011.00 |
|---|---|---|---|---|---|
| 5 | xxxxx9148A<br>(L.C.) | 6075748337000<br>6075748339000 | 03/14/2006 | L0631<br>L1850<br>L3760<br>L3912 | $3,361.00 |
| 6 | xxxxx6173T<br>(G.B.) | 6104733995000<br>6104733996000 | 04/12/2006 | L0631<br>L1843<br>L3760<br>L1930<br>L3912 | $5,485.00 |
| 7 | xxxxx4681B<br>(S.G.) | 6187846857000<br>6187846858000<br>6187846860000 | 07/03/2006 | L0631<br>L1930<br>L3912<br>L3984 | $2,729.00 |
| 8 | xxxxx4274A<br>xxxxx7349<br>(B.R.) | 6192831035000<br>6192831036000<br>6192831038000<br>031230239 | 07/07/2006 | L0631<br>L1930<br>L3912<br>L3984 | $2,729.00 |
| 9 | xxxxx7344A<br>(M.M.) | 6194791168000<br>6194791169000<br>6194791170000<br>6194791171000 | 07/12/2006 | L0631<br>L1930<br>L3912<br>L3984 | $2,729.00 |
| 10 | xxxxx6902B<br>xxxxx7762<br>(R.S.) | 6264799098000<br>6264799099000<br>6264799101000<br>031562435 | 09/20/2006 | L0631<br>L1930<br>L3912<br>L3984 | $2,729.00 |
| 11 | xxxxx0095A<br>(E.S.) | 6292733776000<br>6292733778000<br>6292733779000 | 10/11/2006 | L0631<br>L1930<br>L3912<br>L3984 | $2,729.00 |
| 12 | xxxxx4167A<br>(G.S.) | 6292733781000<br>6292733783000<br>6292733784000 | 10/11/2006 | L0631<br>L1930<br>L3912<br>L3984 | $2,729.00 |
| 13 | xxxxx2682A<br>(H.S.) | 6340795758000<br>6340795759000<br>6340795760000<br>6340795761000 | 12/05/2006 | L0631<br>L1843<br>L1930<br>L3912<br>L3984 | $4,379.00 |
| 14 | xxxxx9148A<br>(L.C.) | 7044809004000<br>7044809005000<br>7044809007000 | 02/12/2007 | L0637<br>L1930<br>L3984 | $2,765.00 |
| 15 | xxxxx4167A | 7192801665000<br>7192801666000 | 07/10/2007 | L0631 | $2,129.00 |

18

| | (G.S.) | 7192801667000 | | L1930 L3912 L3984 L0637 | |
|---|---|---|---|---|---|
| 16 | xxxxx6173T (G.B.) | 7263798808000 7263798809000 | 09/19/2007 | L1930 L3912 | $910.00 |

In violation of Title 18 United States Code, Sections 2 and 1347.

## COUNTS SEVENTEEN THROUGH TWENTY-FOUR
### (Anti-Kickback statute-solicit or receive)
### 42 U.S.C. § 1320a-7b(b)(1)(A).

1.       On or about the dates alleged below, in the Houston Division of the

Southern District of Texas and elsewhere, the defendants

### MARTHA RAMOS
### DEVON MICHEL SPICER

in the counts indicated below, did knowingly, intentionally and willfully solicit and

receive remuneration, including a kickback, bribe and rebate, directly and indirectly,

overtly and covertly, in cash and in-kind in return for referring an individual to a person

for the furnishing and arranging for the furnishing of any item or service for which

payment may be made in whole and in part under a Federal health care program; that is,

the defendant received payments from JAMES CLAUDE REESE JR., LIA SAMIRA ST.

JUNIUS and BRENDA ADRIANA LOPEZ  and companies THE REESE GROUP  and

THE MOBILITY STORE for Medicare and Medicaid patient referrals.

| Count | Defendant | Companies | Patient Medicare/ Medicaid # | Date | Amount |
|---|---|---|---|---|---|
| 17 | Martha Ramos | The Reese Group/The Mobility Store | xxxxxxx4312A (R.B) | 8/14/06 | $303.76 |

| 18 | Devon Michel Spicer | The Reese Group/The Mobility Store | xxxxxxx2268A (T.J.) | 11/08/05 | $105.00 |
| 19 | Martha Ramos | The Reese Group/The Mobility Store | xxxxxxx5375A (M.C.) | 7/03/06 | $265.00 |
| 20 | Martha Ramos | The Reese Group/The Mobility Store | xxxxxx7384A (T.R.) | 8/14/06 | $303.60 |
| 21 | Martha Ramos | The Reese Group/The Mobility Store | xxxxxx4681D (S.G.) | 7/19/06 | $113.00 |
| 22 | Martha Ramos | The Reese Group/The Mobility Store | xxxxxx2829D (V.P.) | 7/03/06 | $303.00 |
| 23 | Devon Michel Spicer | The Reese Group/The Mobility Store | xxxxx3083A (E.V.) | 11/10/05 | $234.00 |
| 24 | Devon Michel Spicer | The Reese Group/The Mobility Store | xxxxx8454A (E.B.) | 11/18/05 | $314.00 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A)

## COUNTS TWENTY-FIVE THROUGH THIRTY-TWO
### (Anti-Kickback statute-offer or pay)
### 42 U.S.C. § 1320a-7b(b)(2)(A).

1.       On or about the dates alleged below, in the Houston Division of the

Southern District of Texas and elsewhere, the defendants,

### JAMES CLAUDE REESE, JR.
### BRENDA ADRIANA LOPEZ

as identified in the table below, did knowingly, intentionally and willfully offer and pay

remuneration, including kickbacks, bribes and rebates, directly and indirectly, overtly and

covertly, in cash and in-kind in return for referring an individual to a person for the

furnishing and arranging for the furnishing of any item or service for which payment may

be made in whole and in part under a Federal health care program; that is, the defendants

paid remuneration to the individuals listed below, for recruiting patients.

| Ct | Defendant(s) | Recipient | Beneficiary Medicare Number | Date | Amount |
|----|--------------|-----------|-----------------------------|------|--------|
| 25 | James Claude Reese Brenda Adriana Lopez | Martha Ramos | xxxxx4312A (R.B) | 08/14/2006 | $303.70 |
| 26 | James Claude Reese | Devon Michel Spicer | xxxxxxx2268A (T.J.) | 11/08/05 | $105.00 |
| 27 | James Claude Reese Brenda Adriana Lopez | Martha Ramos | xxxxx5375A (M.C.) | 07/03/2006 | $265.00 |
| 28 | James Claude Reese Brenda Adriana Lopez | Martha Ramos | xxxxx7384A (T.R.) | 08/18/2006 | $303.60 |
| 29 | James Claude Reese Brenda Adriana Lopez | Martha Ramos | xxxxx4681D (S.G) | 07/19/2006 | $113.00 |
| 30 | James Claude Reese Brenda Adriana Lopez | Martha Ramos | xxxxx2829D (V.P.) | 07/03/2006 | $303.00 |
| 31 | James Claude Reese | Devon Michel Spicer | xxxxx3083A (E.V.) | 11/10/05 | $234.00 |
| 32 | James Claude Reese Brenda Adriana Lopez | Devon Michel Spicer | xxxxx8454A (E.B.) | 11/18/05 | $314.00 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) and Title 18 United States Code, Section 2.

## COUNT THIRTY-THREE
### (Money Laundering Conspiracy)
### 18 U.S.C. § 1956(h)

1.      The allegations contained in paragraphs 1 through 25 and 28 through 39 of

Count One are realleged and incorporated as though fully set forth herein.

2.      Beginning on or about July 19, 2004, the exact time being unknown to the

grand jury, and continuing through June 30, 2007, in the Houston Division of the

Southern District of Texas, and elsewhere,

**JAMES CLAUDE REESE**
**LIA SAMIRA ST JUNIUS**
**BRENDA ADRIANA LOPEZ**

defendants, herein, together with other persons known and unknown to the grand jury, did unlawfully and knowingly combine, conspire, confederate, and agree among themselves and each other to engage and attempt to engage in monetary transactions by, through, or to financial institutions and which affect interstate or foreign commerce, in criminally derived property, such property having been derived from a specified unlawful activity, namely healthcare fraud in violation of Title 18, Unites States Code, Section 1347,  which transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

In violation of Title 18, United States Code, Section 1956(h).

### COUNTS THIRTY-FOUR THROUGH FORTY-FOUR
#### (Money Laundering Concealment)
#### 18 U.S.C. § 1956(a)(1)(B)(i)

1.    The allegations contained in paragraphs 1 through 22 of  Count One are realleged and incorporated as though fully set forth herein.

2.    On or about the dates set forth below, in the Houston Division of the Southern District of Texas and elsewhere, the defendant

**JAMES CLAUDE REESE JR.,**

did knowingly conduct and attempt to conduct financial transactions, affecting interstate commerce, which financial transactions involved the proceeds of specified unlawful activity, that is, health care fraud in violation of Title 18, United States Code, Section

1347, knowing that the financial transaction was designed in whole and in part to conceal or disguise the nature, the location, the source, the ownership, or the control of proceeds of a specified unlawful activity, and while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, as follows:

| COUNT | DATE | FINANCIAL TRANSACTION |
|---|---|---|
| 34 | 07/07/2005 | $23,000.00 transfer from Bank of America Account *3136, styled The Mobility Store to Bank of America Account *8234, styled James C Reese Jr D/B/A The Reese Group |
| 35 | 07/27/2005 | $19,000.00 00 transfer from Bank of America Account *3136, styled The Mobility Store to Bank of America Account *8234, styled James C Reese Jr D/B/A The Reese Group |
| 36 | 09/06/2005 | $5,350.00 Checkcard debit transaction from Bank of America Account *3136, Checkcard *5653 at Gca* L Auberge Du Lac |
| 37 | 12/12/2005 | $5,350.00 Checkcard debit transaction from Bank of America Account *3136, Checkcard *5653 at Gca* L Auberge Du Lac |
| 38 | 04/26/2006 | $20,800.00 transfer from Bank of America Account *3136, styled The Mobility Store to Bank of America Account *6836, styled Lia St Junis DBA The Mobility Store |
| 39 | 05/01/2006 | $13,000.00 transfer from Bank of America Account 3136, styled The Mobility Store to Bank of America Account *6836, styled Lia St Junis DBA The Mobility Store |
| 40 | 05/01/2006 | $16,800.00 transfer from Bank of America Account *3136, styled The Mobility Store to |

|  |  | Bank of America Account *6836, styled Lia St Junis DBA The Mobility Store |
|---|---|---|
| 41 | 08/07/2006 | $22,000.00 transfer from Bank of America Account *3136, styled The Mobility Store to Bank of America Account *6836, styled Lia St Junis DBA The Mobility Store |
| 42 | 04/02/2007 | $21,000.00 transfer from Bank of America Account *3136, styled The Mobility Store to Bank of America Account *1532, styled Lia St Junius Sole Prop The Mobility Store |
| 43 | 04/09/2007 | $10,000.00 transfer from Bank of America Account *3136, styled The Mobility Store to Bank of America Account *1532, styled Lia St Junius Sole Prop The Mobility Store |
| 44 | 05/02/2007 | $7,000.00 transfer from Bank of America Account *3136, styled The Mobility Store to Bank of America Account *1532, styled Lia St Junius Sole Prop The Mobility Store |

## COUNT FORTY-FIVE
### (Attempt to Evade and Defeat Tax )
### 26 U.S.C. § 7201

1.     On or about April 17, 2006, in the Houston Division of the Southern

District of Texas,

JAMES CLAUDE REESE JR.,

the defendant herein and a resident of Fresno, Texas, during the calendar year 2005,  had

and received taxable income in the sum of $509,785.18; that upon said taxable income

there was owing to the United States of America an income tax of $169,457.88; that well-

knowing and believing the foregoing facts, James Claude Reese, on or about April 17,

2006,  in the Houston Division of the Southern District of Texas, did willfully attempt to

evade and defeat the said income tax due and owing by him to the United States of

America for said calendar year by concealing his income from the Internal Revenue

Service through the following affirmative acts;

    a.  by establishing his business, The Mobility Store under the name of Lia St. Junius,

    b.  by opening bank accounts for The Mobility Store at Bank of America between 2004 and 2007 which indicated Lia St. Junius was the owner of The Mobility Store,

    c.  by receiving payments from Medicare and Medicaid into these accounts and causing these payments to be transferred between  accounts,  and

    d.   by obtaining numerous debit cards from Bank of America which he used to withdrawal cash and to make debit card payments for personal expenses.

In violation of Title 26, United States Code, Section  7201.

### COUNT FORTY-SIX
**(Attempt to Evade and Defeat Tax)**
**26  U.S.C. § 7201**

    1.     On or about April 17, 2007, in the Houston Division of the Southern

District of Texas,

### JAMES CLAUDE REESE

the defendant herein and a resident of Fresno, Texas, during the calendar year 2006,  had

and received taxable income in the sum of $1,339,996.06; that upon said taxable income

there was owing to the United States of America an income tax of $477,502.64; that well-

knowing and believing the foregoing facts, James Claude Reese, on or about April 17,

2007,  in the Houston Division of the Southern District of Texas, did willfully attempt to

evade and defeat the said income tax due and owing by him to the United States of

America for said calendar year by concealing his income from the Internal Revenue

Service through the following affirmative acts;

      a.  by establishing his business, The Mobility Store under the name of Lia St.
          Junius,

      b.  by opening bank accounts for The Mobility Store at Bank of America between
          2004 and 2007 which indicated Lia St. Junius was the owner of The Mobility
          Store,

      c.  by receiving payments from Medicare and Medicaid into these accounts and
          causing these payments to be transferred between  accounts,  and

      d.  by obtaining numerous debit cards from Bank of America which he used to
          withdrawal cash and to make debit card payments for personal expenses.

In violation of Title 26, United States Code, Section 7201.

### COUNT FORTY-SEVEN
**(Attempt to Evade and Defeat Tax)**
**26 U.S.C. § 7201**

    1.      On or about April 15, 2008, in the Houston Division of the Southern

District of Texas,

### JAMES CLAUDE REESE

the defendant herein and a resident of Fresno, Texas, during the calendar year 2007,  had

and received taxable income in the sum of $1,039,675.45; that upon said taxable income

there was owing to the United States of America an income tax of $354,162.24; that well-

knowing and believing the foregoing facts, James Claude Reese, on or about April 15,

2008, in the Houston Division of the Southern District of Texas, did willfully attempt to

evade and defeat the said income tax due and owing by him to the United States of

America for said calendar year by concealing his income from the Internal Revenue

Service through the following affirmative acts;

a.  by establishing his business, The Mobility Store under the name of Lia St. Junius,

b.  by opening bank accounts for The Mobility Store at Bank of America between 2004 and 2007 which indicated Lia St. Junius was the owner of The Mobility Store,

c.  by receiving payments from Medicare and Medicaid into these accounts and causing these payments to be transferred between  accounts,

d.   by obtaining numerous debit cards from Bank of America which he used to withdrawal cash and to make debit card payments for personal expenses,

e.  by placing the purchase of his residence worth over $800,000 in the name of Lia St. Junius, and

f.  by placing the purchase of a 2007 Bentley Flying Spur automobile worth over $170,000 in name of R.B.

In violation of Title 26, United States Code, Section  7201.

## NOTICE OF CRIMINAL FORFEITURE
### (18 U.S.C. 982 (a)(7))

Pursuant to Title 18, United States Code, Section 982(a)(7), as a result of the commission

of a violation of 18 U.S.C. 1347 and 371, notice is given that defendants

**JAMES CLAUDE REESE, JR.
LIA SAMIRA ST. JUNIUS
BRENDA ADRIANA LOPEZ
LILY ZATHEL JOHNSON
MARTHA RAMOS
DEVON MICHEL SPICER**

shall forfeit all property, real or personal, that constitutes or is derived, directly or

indirectly, from gross proceeds traceable to the commission:

a.     the conspiracy charged in Count One of the Indictment; and

b.     the substantive violations of 18 U.S.C. 1347 charged in Counts Two through Sixteen of the Indictment.

The property subject to forfeiture includes, but is not limited to:

1.      approximately $5,600,000.00 in United States dollars, representing the amount of proceeds obtained as a result of the conspiracy charged in Count 1;

2.      the amount of proceeds obtained as a result of each offense charged in Counts 2-16;

Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C), the United States gives notice that defendants shall forfeit all property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. 1347.  In the event that the property which is subject to forfeiture to the United States, as a result of any act or omission of the defendant:

(a)      cannot be located upon exercise of due diligence;

(b)      has been placed beyond the jurisdiction of the Court;

(c)      has been transferred or sold to, or deposited with a third party;

(d)      has been substantially diminished in value; or

(e)      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of the defendants up to the value of such property, pursuant to Title 21 United States Code, Section 853(p), made applicable to these offenses by Title 18, United States Code,

Section 982(b)(1) and 28 United States Code, Section 2461(c).

A TRUE BILL

ORIGINAL SIGNATURE ON FILE

FOREPERSON

JOSÉ ANGEL MORENO
UNITED STATES ATTORNEY

By: _____
SAMUEL J. LOUIS
ASSISTANT UNITED STATES ATTORNEY
(713)567-9737